J-A16016-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RAEMAR POWELL | |
| Appellant | No. 656 WDA 2016 |

Appeal from the Judgment of Sentence Entered April 7, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No: CP-02-CR-0004937-2015

BEFORE: STABILE, J., FORD ELLIOTT, P.J.E., and STRASSBURGER, J.[*]

MEMORANDUM BY STABILE, J.:                    FILED: SEPTEMBER 28, 2017

Appellant Raemar Powell appeals from the April 7, 2016 judgment of sentence entered in the Court of Common Pleas of Allegheny County ("trial court"), following his bench convictions for two counts of possession with intent to deliver heroin ("PWID") (35 P.S. § 780-113(a)(30)), possession of a controlled substance (heroin) (35 P.S. § 780-113(a)(16)), possession of drug paraphernalia (35 P.S. § 780-113(a)(32)), and criminal use of communication facility (18 Pa.C.S.A. § 7512). Upon review, we affirm.

Following an undercover narcotics operation by the District Attorney's Narcotics Enforcement Team ("DANET"), Appellant was charged with the above-mentioned crimes. On July 22, 2015, Appellant filed a "Motion to

_____

[*] Retired Senior Judge assigned to the Superior Court.

Disclose Identity of Confidential Informant," seeking the identity of the confidential informant ("CI") because of inconsistencies between the information contained in the criminal complaint and the testimony presented at his preliminary hearing. Specifically, Appellant claimed that, while the "[c]riminal [c]omplaint makes no mention of a [CI] being involved [in the undercover operation,]" "the detective stated [at the preliminary hearing] that the CI was involved and did the 'hand to hand deal' himself with [Appellant]." Appellant's Motion to Disclose, 7/22/15, at ¶¶ 2-3 (sic). Thus, Appellant claimed that the information adduced at the preliminary hearing was "contrary to what was stated in the [c]riminal [c]omplaint." Id. at ¶ 3.

On November 12, 2015, the trial court held a hearing on Appellant's disclosure motion. At the hearing, the Commonwealth presented the testimony of Detective Robert Grondwalski, a fifteen-year veteran of the Hampton Township Police Department.

Detective Grondwalski testified that, on February 10, 2014, he was working in an undercover capacity as a narcotics investigator when he engaged in a narcotics transaction with Appellant. Id. at 9. According to Detective Grondwalski, the officers who initiated the undercover operation showed him a photograph of Appellant prior to the narcotics transaction. Id. at 9-10. As a result of having seen Appellant's "mugshot," Detective Grondwalski was able to identify Appellant at the time of the transaction. Id. at 9.

Describing the events that precipitated the February 10, 2014 incident, Detective Grondwalski testified that, in his presence, the CI called Appellant to set up a drug transaction. Id. at 11. Detective Grondwalski stated that the CI and Appellant arranged for the transaction to take place at "the Burger King Restaurant on Route 8 in Shaler." Id. at 11. Detective Grondwalski also testified that, to complete the narcotics transaction, he drove himself and the CI to Burger King restaurant in his undercover vehicle. Id. According to Detective Grondwalski, other officers had set up surveillance of the location. Id.

He testified that he and the CI arrived at Burger King first and waited slightly over an hour for Appellant to arrive. Id. at 12-13. Detective Grondwalski further testified that Appellant pulled up in a Silver Audi and parked it "within a car length" from Detective Grondwalski's vehicle. Id. at 13. A female was seated in the front passenger seat next to Appellant. Id. Detective Grondwalski further testified that he exited his vehicle and that the CI remained seated inside the undercover vehicle, where he remained throughout the narcotics transaction at issue. Id. Detailing his encounter with Appellant, Detective Grondwalski testified:

> [Appellant] was the operator of the vehicle. There was an unknown female seated in the front passenger seat. I conducted the transaction with [Appellant] through the front passenger window in which case the female did not touch any drugs or any money and didn't say anything about the transaction. I conducted it directly with [Appellant].

Id.   Detective Grondwalski stated that he recognized Appellant from the photograph that was shown to him prior to the narcotics transaction.   Id. at 14.

On cross-examination, Appellant confronted Detective Grondwalski with the alleged inconsistences between the information contained in the criminal complaint and Detective Grondwalski's testimony at the preliminary hearing[1] regarding the involvement of the CI.   Detective Grondwalski testified that he did not issue the criminal complaint and rejected Appellant's claim that Detective Grondwalski had agreed at the preliminary hearing to reveal the identity of the CI at trial.   Id. at 15-18.   Moreover, Detective Grondwalski rejected Appellant's claim that, at the preliminary hearing, Detective Grondwalski had testified that it was the CI—not he—who engaged in the hand-to-hand drug transaction with Appellant.   Id. at 16-17 ("I said [the CI] arranged [the narcotics transaction].   [The CI] never took part in it.").   Detective Grondwalski explained that, prior to the transaction at issue, the CI had confirmed the identity of Appellant.   Specifically, Detective Grondwalski explained:

> Typically what happens is somebody wants to cooperate with the police.   They say they can buy controlled substances from an individual.   They may know this individual.   They may know this individual by a legal name.   They may not know them by a legal name.   They may know him by a street name and they give a description.   They may have a number.

_____

[1] As a court reporter was not present, the preliminary hearing was not transcribed.  See N.T. Hearing, 11/12/15, at 17-18.

The officers do a background investigation. We try to figure out the legal identity of this person. If we obtain the legal identity of this person, we would show some form of mugshot, JNET photo, something, to the informant. "Is this the person you know sells drugs?"

They would confirm the identity of that person. We would conduct a transaction with this person sometimes using a body wire, sometimes using an undercover police officer.

At the conclusion of this transaction, if we know the identity of the suspect, the legal name, and it is confirmed by the confidential informant and by the undercover police officer, we allow them to leave with the money for safety purposes and to protect the confidentiality of the informant.

If we do not know the identity of this person, we would not allow this to take place. We would be giving our money away to an unknown person. We would not able to make an arrest[.]

Id. at 20-22.

In response, Appellant presented the testimony of his mother, Lashonn Perry, to impeach the credibility of Detective Grondwalski. Ms. Perry testified that, contrary to Detective Grondwalski's testimony, he did testify at the preliminary hearing that the CI "made a hand-to-hand buy with" Appellant and that the Commonwealth would reveal the identity of the CI at trial. Id. at 27.

At the close of the hearing, in support of Appellant's disclosure motion, his counsel argued that there was "definitely a contradiction as to how the identity [of Appellant] was made and to whom it was made. I think those are matters that can be cleared up." Id. at 31. Essentially, counsel urged the trial court not to find Detective Grondwalski's testimony credible, absent corroboration of the circumstances underlying the narcotics transaction by the CI. Id. at 33.

On January 14, 2016, on the day of—but prior to the commencement of—Appellant's non-jury trial, the trial court denied Appellant's motion to seek disclosure of the CI's identity. In so doing, the trial court found:

> [Detective] Grondwalski, a Hampton police officer with 15 years experience and also a member of the DANET team and District Attorney's Narcotics Enforcement Team, is part of the investigation here that began on February—early February, February 7, 2014, targeting eventually [Appellant] and the investigation including the use of [the CI] and [the CI] being used to contact [Appellant] to arrange a buy that took place on February 10, 2014.
>
> The [CI] was used to call [Appellant] in the presence of the police officers, DANET team and a meeting was arranged on Route 8 in Shaler Township at the Burger King restaurant. The CI accompanied [Detective] Grondwalski to the pre-arranged site, in fact that vehicle with Grondwalski and the CI arrived prior to [Appellant's] arriving. [Appellant] arrived in a separate vehicle with a female companion in the front seat, [Appellant] being the driver of that vehicle.
>
> [Detective Grondwalski] left his vehicle and conducted—allegedly conducted a transaction between himself and [Appellant] and the vehicles left the area and the drugs were secured. Those drugs were secured and [Appellant] eventually arrested in that regard.
>
> . . . .
>
> There's a dispute on two fronts from my perception; one is the usual strict legal analysis of the production of the CI for purposes of trial, in the interest of preparing and presenting [Appellant's] defense. There is a second issue as to the production of the CI pursuant to a representation [Appellant's] counsel] states was made by [Detective Grondwalski] at the preliminary hearing.
>
> The court finds in this instance that the CI was the—remained in the vehicle when the transaction occurred. [The CI] is a potential witness to events surrounding the actual exchange but apparently not a witness to the actual exchange of money and drugs as that took place at the window of the vehicle with [Appellant] and [Detective] Grondwalski.
>
> In any event the court finds also that [Appellant] has available to him in terms of the exact specifics of the transaction the female person who has not yet been identified. But even if the court were to reach—make that determination of materiality

> the court finds as stated at the time of the preliminary hearing the Commonwealth has an interest in protecting the CI's identity and safety in today's world of violence surrounding the drug trade. Consequently, the court is denying the motion for production under that analysis.
>
> Now, as to the alleged promise that was made to produce the CI for purposes of trial by [Detective Grondwalski] or officers at the preliminary hearing, the court finds that in that instance that the officers have no authority to promise production of any witness at that point in time. At a preliminary hearing, the district attorney's office assumes control of the prosecution consistent with the rules of criminal procedure and it's their prosecution not the police prosecution. Consequently, even if such a promise was made the court is not finding such. It is without legal effect. It's the DA who has the authority to do so and if in fact that occurred has not been established. Consequently the motion to produce on both fronts is denied.

N.T. Trial, 1/14/16, at 3-6 (sic) (emphasis added).

At the January 14, 2016 non-jury trial, Appellant did not renew his motion for disclosure of the CI's identity or proffer any additional or new evidence in support of such motion. Following the trial, the trial court found Appellant guilty of two counts of PWID, possession of a controlled substance (heroin), possession of drug paraphernalia, and criminal use of communication facility. On April 7, 2016, the trial court sentenced Appellant to an aggregate term of three years' probation.[2] Appellant did not file any post-sentence motions. Appellant, however, timely appealed to this Court.

The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Appellant complied, asserting, among other things, that the trial court abused its discretion in denying his pretrial

_____

[2] At count one (PWID), concurrently with his sentence of probation, the trial court also sentenced Appellant to 12 months of intermediate punishment.

motion for disclosure of the CI's identity. In response, the trial court issued a Pa.R.A.P. 1925(a) opinion, concluding in part that Appellant's claim was without merit.

On appeal, Appellant repeats the same issue for our review:

[I.] Whether the trial court erred and/or abused its discretion in failing to order the Commonwealth to produce the name of the [CI]?

Appellant's Brief at 6.

"Our standard of review of claims that a trial court erred in its disposition of a request for disclosure of an informant's identity is confined to abuse of discretion." Commonwealth v. Watson, 69 A.3d 605, 607 (Pa. Super. 2013) (citation omitted). Similar to other pretrial motions, such as suppression, when an appellant challenges a pretrial motion for disclosure of a CI's identity, our scope of review is limited to the relevant pretrial hearing transcripts. See In the Interest of L.J., 79 A.3d 1073, 1088-89 (Pa. 2013) (noting that our scope of review is limited to the evidence presented at the pretrial hearing). Moreover, "it is inappropriate to consider trial evidence as a matter of course, because it is simply not part of the [pretrial] record, absent a finding that such evidence was unavailable during the [pretrial] hearing". Id. at 1085.

Rule of Criminal Procedure 573 provides that a trial court has the discretion to require the Commonwealth to reveal the names and addresses of all eyewitnesses, including confidential informants, where a defendant makes a showing of material need and reasonableness:

(a) In all court cases, except as otherwise provided in Rule 230 (Disclosure of Testimony Before Investigating Grand Jury), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:

　　(i) the names and addresses of eyewitnesses.

　　. . . .

Pa.R.Crim.P. 573(B)(2)(a)(i).

The Commonwealth enjoys a qualified privilege to withhold the identity of a confidential source. In order to overcome this qualified privilege and obtain disclosure of a confidential informant's identity, a defendant must first establish, pursuant to Rule 573(B)(2)(a)(i), that the information sought is material to the preparation of the defense and that the request is reasonable. Only after the defendant shows that the identity of the confidential informant is material to the defense is the trial court required to exercise its discretion to determine whether the information should be revealed by balancing relevant factors, which are initially weighted toward the Commonwealth.

In striking the proper balance, the court must consider the following principles:

　　A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations[,] the trial court may require disclosure and, if the Government withholds the information, dismiss the action.

　　[N]o fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders

nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

Commonwealth v. Marsh, 997 A.2d 318, 321-22 (Pa. 2010) (internal citations omitted) (alteration in original).

"Where the confidential informant is not a witness to the incident at issue, the defendant must show that the Commonwealth's disclosure of the identity of the informant is (1) material to his defense; (2) reasonable; and (3) in the interests of justice." Commonwealth v. King, 932 A.2d 948, 952 (Pa. Super. 2007).

Regarding the element of materiality, the defendant must show as a threshold matter that the informant's identity is germane to the defense. Evidence is relevant and material to the defense if it tends to show that a specific crime of which a defendant stands accused was committed by someone else. The record must disclose a reasonable possibility that the information sought will materially aid the defendant in presenting his defense and is not obtainable from another source.

Id. at 953 (quotation marks and citations omitted) (emphasis in original). Thus, "[b]efore an informant's identity may be revealed, the defendant must lay an evidentiary basis or foundation that the confidential informant possesses relevant information that will materially aid the defendant in presenting his or her defense and that the information is not obtainable from another source." Commonwealth v. Hritz, 663 A.2d 775, 780 (Pa. Super. 1995) (citation and emphasis omitted). Furthermore, "the safety of the confidential informant is a controlling factor in determining whether to reveal his identity." Commonwealth v. Bing, 713 A.2d 56, 58 (Pa. 1998).

Instantly, on appeal, Appellant argues that the trial court abused its discretion in denying his disclosure motion because (1) the incident in question involved "a single drug transaction by a person that the police did not buy drugs from before or after;" (2) "[t]he police witnesses did not know Appellant;" (3) "the criminal complaint was filed over nine (9) months later;" and (4) "the Commonwealth presented no independent evidence which demonstrated a connection between Appellant and the vehicle and/or the telephone" used to set up the narcotics transaction. Appellant's Brief at 12, 21-22. At the core, Appellant essentially raises a misidentification argument.

The foregoing argument, however, is in stark contrast to the argument made in the trial court or contained in the motion for disclosure of the CI's identity. Specifically, in the trial court, Appellant claimed that the inconsistencies between the information contained in the criminal complaint and Detective Grondwalski's testimony required the disclosure of the CI's identity. In other words, Appellant sought the disclosure of the CI's identity to contradict Detective Grondwalski's version of how the narcotics transaction occurred and who was involved in the hand-to-hand buy.

Based on our review of the record, as detailed above, we conclude that Appellant is not entitled to relief. Here, as the Commonwealth aptly notes, "Appellant made no showing of mistaken identity at the pre-trial hearing and made no offering as to exactly how the CI's testimony would be helpful to his defense." Commonwealth's Brief at 15. Appellant made only a bald

allegation that the disclosure of the CI's identity would entitle him to a fair trial without specifying how the disclosure of the CI's identity was material to his defense, reasonable and in the interests of justice. Indeed, at the hearing on his disclosure motion, Appellant did not argue that he was not present in the vehicle at the time of the narcotics transaction. Appellant also did not argue that the CI would possess exculpatory evidence that would aid Appellant in establishing his innocence or otherwise was necessary for the preparation of his defense. Thus, under the circumstances of this case, we cannot conclude that the trial court abused its discretion in denying Appellant's disclosure motion because he failed to make a showing of materiality.[3] Accordingly, Appellant's claim on appeal fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/28/2017

_____

[3] Because Appellant is unable to show materiality, we need not determine whether his request for disclosure of the CI's identity is reasonable or in the interests of justice. See Pa.R.Crim.P. 573(B)(2)(a)(i); Marsh, surpa, Hritz, supra.