COMMONWEALTH of Pennsylvania,
Appellee

v.

Michael WATSON, Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 28, 2013.
Filed May 1, 2013.

**606**

Karl Baker, Public Defender, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., BOWES, J., and FITZGERALD, J.*

OPINION BY STEVENS, P.J.

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County, which, sitting as finder of fact in a non-jury trial, found Appellant guilty of possession with intent to deliver a controlled substance[1] and knowingly or intentionally possessing a controlled substance.[2] Appellant claims that the trial court erroneously ruled against compelling identity disclosure of the confidential informant who purchased narcotics from him. We affirm.

The case *sub judice* arises from events occurring on January 19, 2010, in which Officer Hattie McKellar of the Narcotics Field Unit surveillance team employed a confidential informant ("CI") to purchase drugs with prerecorded buy money at the residential address of 3236 W. Fontain Street. N.T. 5/2/11 at 6–7. From her undercover position 20 to 30 feet away inside a parked car, Officer McKellar witnessed Appellant standing outside the residence as the CI approached him. N.T. at 14–15. The CI spoke with Appellant briefly before handing him the buy money. Appellant took the money inside the residence and returned, about thirty seconds later, to hand small objects to the CI. The CI returned directly to Officer McKellar and produced four blue-capped, clear vials of crack cocaine. N.T. at 6–7.

---

* Former Justice specially assigned to the Superior Court.

1. 35 P.S. § 780–113(a)(30).

2. 35 P.S. § 780–113(a)(16).

Officer McKellar's observations formed the basis for a search warrant for 3236 W. Fontain Street, which police executed on January 21, 2010, two days after the observed transaction. As they approached the boarding house at that address, officers saw Appellant walk out and surreptitiously discard underneath a parked car objects that, when recovered and tested by police, proved to be nine clear vials of crack cocaine with gray tops. Four more gray-capped vials were recovered from inside the residence. N.T. at 34–35.

Arrested and charged with offenses stemming from both his transaction with the CI and the crack cocaine recovered during execution of the warrant, Appellant filed a motion to compel disclosure of the CI's identity. On November 30, 2010, the court denied his motion. Appellant proceeded to bench trial on May 2, 2011, where the court found him guilty of PWID on the sale of crack cocaine to the CI, guilty of possession of the crack cocaine thrown under the car, and not guilty on a charge of conspiracy relating to drugs found inside the residence. N.T. at 60. Waiving a presentence investigation report, Appellant stood for sentencing immediately after trial and received an aggregate sentence of three years' probation.

In this timely appeal, Appellant raises the following issue:

**DID NOT THE LOWER COURT ERR IN FAILING TO ORDER DISCLOSURE OF THE IDENTITY OF THE CONFIDENTIAL INFORMANT, WHERE APPELLANT ASSERTED A DEFENSE OF MISTAKEN IDENTITY AT TRIAL, WHERE THE INFORMANT WAS THE ONLY EYEWITNESS OTHER THAN A SINGLE POLICE OFFICER, AND WHERE THE COMMONWEALTH FAILED TO DEMONSTRATE ANY EXCEPTIONAL OR COMPELLING REASON FOR NONDISCLOSURE THAT OUTWEIGHED APPELLANT'S RIGHT TO PREPARE A DEFENSE?**

Brief of Appellant at 3.

■ "Our standard of review of claims that a trial court erred in its disposition of a request for disclosure of an informant's identity is confined to abuse of discretion." *Commonwealth v. Washington,* 63 A.3d 797, 801 (Pa.Super.2013).

Under Pennsylvania Rule of Criminal Procedure 573, a trial court has the discretion to require the Commonwealth to reveal the names and addresses of all eyewitnesses, including confidential informants, where a defendant makes a showing of material need and reasonableness:

> (a) In all court cases, except as otherwise provided in Rule 230 (Disclosure of Testimony Before Investigating Grand Jury), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:
>
> (i) the names and addresses of eyewitnesses. . . .

Pa.R.Crim.P. 573(B)(2)(a)(i).

The Commonwealth enjoys a qualified privilege to withhold the identity of a confidential source. *Commonwealth v. Bing,* [551 Pa. 659, 713 A.2d 56 (1998) ]; *Commonwealth v. Roebuck,* 545 Pa. 471, 681 A.2d 1279, 1283 n. 6 (1996). In order to overcome this qualified privilege and obtain disclosure of a confidential informant's identity, a defendant must first establish, pursuant to Rule 573(B)(2)(a)(i), that the information sought is material to the preparation of

the defense and that the request is reasonable. *Roebuck, supra* at 1283. Only after the defendant shows that the identity of the confidential informant is material to the defense is the trial court required to exercise its discretion to determine whether the information should be revealed by balancing relevant factors, which are initially weighted toward the Commonwealth. *Bing, supra* at 58; *Commonwealth v. Herron,* 475 Pa. 461, 380 A.2d 1228 (1977).

In striking the proper balance, the court must consider the following principles:

> A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations[,] the trial court may require disclosure and, if the Government withholds the information, dismiss the action.

> [N]o fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Commonwealth v. Carter,* 427 Pa. 53, 233 A.2d 284, 287 (1967) (quoting *Roviaro v. United States,* 353 U.S. 53, 60–62, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957)).

*Commonwealth v. Marsh,* 606 Pa. 254, 260–261, 997 A.2d 318, 321–322 (2010).

Herein, Appellant contends he overcame the Commonwealth's qualified privilege against disclosure with evidence establishing that disclosure was both material to his misidentification defense and reasonable under the circumstances. Specifically, the first prong of Appellant's misidentification defense rested upon the argument that he shared physical characteristics—heavy build with dark skin—with another man who lived in the boarding house and had been the subject of recent, relevant complaints filed with police. Appellant was not involved with the drug-dealing conspiracy at the address, he maintained, and was there at the time officers arrived to execute the search and seizure warrant only to deliver $350 cash to his girlfriend for the support of their child. However, because his girlfriend was apparently smoking marijuana inside her room against Appellant's prior admonitions, she refused to open the door. So, having been denied entry to her room, Appellant was simply walking out of the apartment house, a victim of unfortunate happenstance with a large sum of cash still in his possession when police arrived.

The second prong of his misidentification defense was that Officer McKellar was the sole eyewitness to the alleged two-minute transaction between the CI and Appellant, who stood some thirty feet from McKellar at the time and was previously unknown to McKellar. The CI's testimony was thus necessary, Appellant maintained, as he represented the only other eyewitness to the transaction, had a superior vantage point, and was a civilian rather than an officer. Moreover, Officer McKellar arrested Appellant not immediately, but two days later upon execution of the search and seizure warrant.

■ Appellant's misidentification defense depended, therefore, on the argument that he was in no way connected with

the drug dealing enterprise taking place at the residence. Most problematic with Appellant's misidentification argument is that officers executing the warrant observed him throw multiple vials of crack cocaine under a parked vehicle in an obvious attempt to avoid arrest. With the basis of his misidentification defense thus completely undermined, Appellant could not reasonably prevail upon the court that disclosure of the CI was somehow material to a defense already proved incredible.

■ Moreover, even if we were to assume Appellant made the threshold presentation of materiality and reasonableness with the trial court, the same problems, when applied in the balancing test cited *supra,* militate in favor of nondisclosure, as Appellant demonstrates neither record support for his defense nor a plausible explanation of how the CI's testimony could have benefitted him. Initially, we note that Officer McKellar's observations of Appellant selling drugs to the CI did not stand in isolation, as other evidence adduced at trial implicated Appellant in participating in the drug trade at that location. Specifically, not only did Appellant himself testify he was present at the address on January 19th, N.T. at 54, his involvement with possessing the very type of clear crack cocaine vials at the location just two days later on the January 21st was established by the testimony of arresting officers Deirdre Cuffie and James Gist. Cuffie observed Appellant walking down the steps of 3234 West Fontain and quickly make a downward hand motion behind a parked car as they approached, while Gist later recovered four grey-capped clear vials from underneath the car. Taken together, this evidence was highly probative to the question of Appellant's identity as the individual who sold vials of crack cocaine to the CI just 48 hours earlier.

Moreover, Officer McKellar, who had conducted over 1,000 surveillances in her career, testified without equivocation that she had positioned the surveillance vehicle about 20 to 30 feet away from target property in such a way to have a clear and unobstructed view of Appellant during the controlled buy. She testified that she observed Appellant during this time for approximately five minutes—including the two-minute transaction time. N.T. at 9, 18. Moreover, as she supervised officers approaching the address to execute the warrant, McKellar spotted Appellant walking down the steps from the front door, immediately identified him as the seller from two days earlier, and ordered officers to seize him.

The totality of evidence, therefore, established that Appellant failed to present credible evidence of mistaken identity, and offered no reason to doubt Officer McKellar's ability to recall accurately the seller's appearance just two days later when executing the search and seizure warrant. Appellant likewise fails altogether to offer an explanation of how the CI's testimony, in light of his possession of multiple vials of crack cocaine outside the address during execution of the warrant, could have aided in his defense. Given this lack of record support for disclosure, we find no abuse of discretion in the ruling against disclosure. *See Marsh, supra* (holding threshold requirements of materiality and reasonableness lacking where evidence of record lent no support to defense; distinguishing cases mandating disclosure where, *inter alia,* defendant made mistaken identity showing and officer's observation predated arrest by weeks or months).

Judgment of sentence is affirmed.